Citizens Savings Bank
vs.
Industrial Trust Co., Ex., et al.

Eq. No. 8828

November 2, 1928.

BAKER, J.  Bill of interpleader brought by the complainant to determine the ownership of a certain deposit held by it.

The respondent Industrial Trust Company claims said deposit as executor of the will of one Samuel J. McMillen, and the respondent Mabel McMillen, daughter of the said Samuel, claims said deposit as survivor under a joint account with her father.

The evidence shows that the account in question was opened in June, 1926, and continued for something over a year until Mr. McMillen's death.

In support of her claim to the account, Mabel McMillen, by her own testimony and that of her stepmother, the second wife of Mr. McMillen, and that of Mr. Cooke, the treasurer of the complainant bank, contended that Mr. McMillen stated at about the time the account in question was open that

the money deposited therein came from the property or the estate of his first wife, the mother of Mabel, and therefore properly belonged to her.

The Industrial Trust Company, however, to contradict this, introduced by way of testimony and exhibits quite conclusive evidence to show that this was not the case and that, as a matter of fact, the funds with which the account was opened came from Mr. McMillen's interest in certain real estate and a certain business.

After examining this evidence with care, the Court is satisfied that in this matter the contention of the Industrial Trust Company is supported by the preponderance of the evidence. It may be, of course, as has been argued on behalf of Mabel McMillen that the statements in question were actually made by Mr. McMillen for family reasons and to aid in the disposition of his property. However, that may be, the Court is reasonably satisfied that the account in question, or certainly the greater part of it, consisted of funds belonging in the first instance to Mr. McMillen himself.

This question, of course, is not in any way conclusive of the rights of the claimants. In many cases joint accounts with right of survivorship are opened by persons for various causes entirely with their own money. The real issue to be determined in this case is whether the testimony shows sufficiently clearly that at the time the account was opened Mr. McMillen intended it to be in the nature of a gift inter vivos and to create a present, complete and absolute interest in the donee, Mabel McMillen.

The Industrial Trust Company urges that the testimony does not show this and that at most it reveals an intention on the part of Mr. McMillen to create something in the nature of a testamentary gift or disposition which, of course, clearly can not be carried out in this manner.

Providence Institution for Savings vs. Carpenter, 18 R. I. 287.

Mabel McMillen, on the other hand, urges that the testimony amply supports her claim that a complete, present gift was intended when the joint account was opened in 1926. The intention, therefore, of Mr. McMillen at the time the account was opened would seem to be the controlling factor.

Of the testimony presented by Miss McMillen in support of her claim, that of Mr. Cooke, who is to a certain extent disinterested in the matter, has great weight with the Court. He says that Mr. McMillen consulted him several times before the account was opened and explained to him what he desired and what his purposes were.

The Industrial Trust Company argues that a consideration of the evidence presented by the witnesses shows that the account was opened in order that the daughter might have certain funds in case of sickness or in case of her father's death, having in mind the length of time necessary to close estates of deceased persons, and that the gift, if any, was on those contingencies and that Mr. McMillen showed no intention to divest himself at that time of the exclusive ownership and control of the money. The Industrial Trust Company calls to the Court's attention that Mr. McMillen practically kept control of the bank book during his life. The evidence shows that Miss McMillen had the book for short periods at least twice and that the book was kept in a small safe along with all the rest of the family bank books and papers.

The Court in this State has held several times that the possession of the bank book is not controlling.

Marston vs. Industrial Trust Co., 107 Atl. 88; Industrial Trust Co. vs. Scanlon, 26 R. I. 228.

In the judgment of the Court, the case of Woonsocket Institution for Savings vs. Heffernan, 20 R. I. 308, is not in point in the present case.

The fact, therefore, that Mr. McMillen may have had possession of the book practically all the time during the existence of the account is not in the opinion of the Court in any way conclusive.

The respondent Mabel McMillen urges that the testimony relating to her father's intention goes much further than the Industrial Trust Company contends. She claims that the testimony of Mr. Cooke shows beyond question that the account was to be a pure joint account with right of survivorship and that her father intended to divest himself of the exclusive ownership and control of the money and that the facts show that there was a present and complete interest in herself as donee.

After examining the evidence on this point carefully, the Court feels that it goes much further than the Industrial Trust Company claims. Several times in his testimony Mr. Cooke repeated substantially that the money was to be used for her purposes or for her father's, which ever one cared to withdraw it, and it was the latter's intention that either depositor might draw out at any time without interference from the other and that the death part of the matter was not particularly emphasized; it was more of a provision for sick purposes.

The Court believes that the references to providing ready money at the time of his death and in case of sickness were not in the nature of contingencies upon which the divesting of ownership depended, but only expressed possible reasons why the account was being opened, and the Court finds that it was the present intention of Mr. McMillen at the time the account was opened in June, 1926, to divest himself of exclusive ownership in favor of his daughter, Mabel McMillen, and to then open a joint ac-

count from which they both could draw freely at any time, and that said account carried with it the right of survivorship.

In the judgment of the Court, the situation presented resembles more nearly those referred to in the cases of *Whitehead* vs. *Smith*, 19 R. I. 135; *Industrial Trust Co.* vs. *Scanlon*, supra; *Rafferty* vs. *Reilly*, 41 R. I. 47, and *Marston* vs. *Industrial Trust Co.*, supra, in which the deposits were held to be joint accounts with right of survivorship, than it does in the cases of *Providence Institution for Savings* vs. *Carpenter*, supra, and *Woonsocket Institution for Savings* vs. *Heffernan*, supra. Further, it should be noted that when the account in question was opened by Mr. McMillen, both he and his daughter signed certain cards for the complainant bank in which the following language was used: * * * "It is hereby stipulated and agreed that this account is a joint account, subject to withdrawal by either of the depositors mentioned in this account, and that in the event of the death of either of the said depositors, the moneys then due thereon shall belong to and be paid to the survivor." It seems to the Court that the signing of these cards which Mr. McMillen and his daughter must have read, particularly after the talks by Mr. McMillen with Mr. Cooke of the complainant bank, has considerable weight as revealing the present intention of Mr. McMillen in opening the account and tends to support the claim of Mabel McMillen to said account.

The Industrial Trust Company, however, urges that the conduct of the parties and certain facts other than the statements of Mr. McMillen show that this was not a pure joint account with right of survivorship. It calls attention to the fact that Mr. McMillen and his daughter had another joint account in the National Exchange Bank and argues that there was no reason or purpose in opening another joint account in the complainant bank. In this connection, however, the facts as produced seem to show that the money in the joint account in the National Exchange Bank was really, to all intents and purposes, the individual money of Mabel McMillen. Mr. McMillen never drew from this account, and it seems quite clear that while it was in the form of a joint account it was actually the daughter's money. This might explain, perhaps, the opening of the present account in the complainant bank from which both could draw.

The Industrial Trust Company also calls to the attention of the Court that Mabel McMillen made no withdrawals from the account in dispute, but that Mr. McMillen made several with which he bought securities, taking them in his own name. It argues that this shows the account was his exclusively and was not a joint account.

While undoubtedly this testimony is of some value in determining the intent of the parties, it is not in the judgment of the Court sufficiently strong to outweigh Mr. McMillen's statements to Mr. Cooke at the time the account was opened. Further, Miss McMillen states that she knew about the withdrawals in question and about the buying of the securities. Her testimony, however, is that she understood that these purchases would enure to her benefit. While it is true that the securities bought were taken in Mr. McMillen's name, to a certain extent they did enure to his daughter's benefit, because presumably they became part of his estate and passed under his will to the trustee, the daughter deriving some benefit as a cestuis.

The remaining matter referred to by the Industrial Trust Company relates to a Philadelphia trip taken by Miss McMillen, at which time Mr. McMillen said he was short of money and asked her to use some of her own and said that he would repay her. At this time

there was a substantial balance in the account in question. Miss McMillen had a small account of her own in the complainant bank and she drew from this.

It does not seem to the Court that this single incident standing alone is sufficiently strong to enable the Court to say that this account was not a joint account. Miss McMillen undoubtedly drew from the account which was the more convenient. It is possible that her father may have expected her to draw from the joint account. Nothing appears in the testimony as to this except that the father said that he could not then advance her money. She states that she had no reason to make other withdrawals from this account during her father's life, because he always furnished her with a weekly allowance and she had no need of money.

Taking the whole situation into consideration and keeping in mind the law as laid down by the Courts in this State relating to the creation of joint accounts, the Court finds that the testimony of Mr. Cooke relating to the statements of Mr. McMillen at the time the account was opened and the signing of the cards for the complainant bank outweigh such facts and incidents as have been called to the Court's attention by the claimant Industrial Trust Company and that the preponderance of the evidence shows that it was the intention of Mr. McMillen in June, 1926, when the account was opened, to create a joint account with his daughter with the right of survivorship, and to divest himself then of the exclusive ownership and control of the money and to vest it jointly in himself and his daughter.

That being so, the Court is of the opinion that the claimant Mabel McMillen is entitled to the deposit in dispute.

For complainant: Henshaw, Lindemuth & Baker.

For respondent: Industrial Trust Co.; Huddy & Moulton.

For respondent: Mabel McMillen; Arthur Cushing.